IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Charles Eugene Strang, | ) | Civil Action No. 8:13-cv-02834-JMC-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

In March 2010, Plaintiff filed an application for DIB, alleging an onset of disability date of January 15, 2008.  [R. 113–120.]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 63–69, 71–73.]  Plaintiff requested a hearing before an administrative law judge ("ALJ") and on March 9, 2012, ALJ Kelly Wilson conducted a de novo hearing on Plaintiff's claim.  [R. 33–62.]

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

The ALJ issued a decision on June 12, 2012, finding Plaintiff not disabled. [R. 20–30.]  At Step 1,[2] the ALJ found Plaintiff last met the insured status requirements of the Social Security Act ("the Act") on June 30, 2011, and had not engaged in substantial gainful activity during the period from his alleged onset date of January 15, 2008 through his date last insured of June 30, 2011. [R. 22, Findings 1 & 2.]  At Step 2, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and degenerative joint disease in the knees.  [R. 22, Finding 3.]  The ALJ also found Plaintiff had the following non-severe impairments: chronic pulmonary obstructive disease ("COPD") and depression.  [R. 22–23.]  At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 23, Finding 4.]  The ALJ specifically considered Listings 1.02 and 1.04.  [R. 23.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant needs an option to alternate between sitting and standing at thirty minute intervals. The claimant can only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs.  He can never climb ladders, ropes, or scaffolds, should avoid concentrated exposure to extreme heat, extreme cold, fumes, odors, dust, gases, and hazards.

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[R. 23, Finding 5.]  Based on this RFC finding, the ALJ determined at Step 4 that Plaintiff could not perform his past relevant work as a construction worker [R. 28–29, Finding 6]; but based on his age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), there were jobs that existed in significant numbers in the national economy that Plaintiff could perform  [R. 29, Finding 10].  On this basis, the ALJ found Plaintiff had not been under a disability as defined by the Act from January 15, 2008, through June 30, 2011.  [R. 30, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision but the Council declined.  [R. 1–10. ]  Plaintiff filed this action for judicial review on October 17, 2013.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and that remand is necessary for the following reasons:

1.    the ALJ did not perform the analysis of the treating and evaluating physician opinions required by 20 CFR §404.1527(d)(1)–(6), SSR 96-2p, and SSR 96-5p [Doc. 17 at 17–28];

2.    the ALJ provided no meaningful assessment of Plaintiff's credibility [*id.* at 28–34]; and

3.    the ALJ and the VE failed to acknowledge and resolve the conflict between the vocational testimony and the DOT [*id.* at 35–37.

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that the ALJ properly evaluated the medical opinions in the record [Doc. 20 at 8–18]; the ALJ properly evaluated Plaintiff's subjective complaints [*id.* at 18–24]; and the ALJ's step-five determination is supported by substantial evidence [*id.* at 24–26].

## STANDARD OF REVIEW

3

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the

5

Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

6

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).   The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.   20 C.F.R. § 404.1520.   Through the fourth step, the burden of production and proof is on the claimant.   *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).   The claimant must prove disability on or before the last day of her insured status to receive disability benefits.   *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).   If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.   *Grant*, 699 F.2d at 191.   If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.   20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B).

9

### C.   *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(d).

### D.   *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 404.1560(b).

### E.   *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a).

10

from an exertional impairment, without significant nonexertional factors.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).   When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").   The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the

opinion, 20 C.F.R. § 404.1527©.  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v.*

*Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).   The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re

14

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518

(4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ

must consider all of a claimant's statements about his symptoms, including pain, and

determine the extent to which the symptoms can reasonably be accepted as consistent with

the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has

rejected a rule which would require the claimant to demonstrate objective evidence of the

pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the

Commissioner to promulgate and distribute to all administrative law judges within the circuit

a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.

Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence. If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability. Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered. Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,

> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485;

*see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the

record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria.  *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb

credibility findings that are based on a witness's demeanor.  But administrative findings

based on oral testimony are not sacrosanct, and if it appears that credibility determinations

are based on improper or irrational criteria they cannot be sustained.").

### APPLICATION AND ANALYSIS

**Weight Given to Medical Opinions**

Plaintiff contends the ALJ's erred by not giving controlling weight to the opinion of treating physician Douglas E. Holford, M.D. ("Dr. Holford") [Doc. 17 at 20–24]; giving little weight to the opinion of physical therapist Paula Bolton ("Bolton") [*id.* at 24–26]; and giving little weight to the opinion of Blake H. Moore, M.D. ("Dr. Moore") [*id.* at 26–28].

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). ALJs typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the

17

> opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating

source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); see also 20 C.F.R. §§ 404.1527(e),

416.927(e) (stating an ALJ does not have to "give any special significance to the source

of an opinion on issues reserved to the Commissioner," such as an opinion that the

claimant is disabled, the claimant's impairment or impairments meets or equals a listing,

or the claimant has a certain residual functional capacity).

### *Medical History*

Plaintiff alleges disability due to two herniated discs, ligament problems in his right

and left knees, and shortness of breath. [R. 165.] Plaintiff worked construction jobs for

fifteen years prior to becoming unable to work. [R. 167.] Plaintiff underwent left knee

surgery in 2002 and back surgery in 1991. [R. 306.] Plaintiff's medical history during the

relevant time period of January 15, 2008 through June 30, 2011, shows that on January

18

24, 2008, Plaintiff saw Dr. Holford of the Carolina Musculoskeletal Institute, P.A., with continued complaints of back pain lifting, bending, and stooping.  [R. 305.]  Plaintiff had been previously released to light duty but, apparently, had not returned to work.  [*Id.*]

Plaintiff underwent an MRI of the lumbar spine on February 4, 2008.  [R. 325.] Findings in the thoracic spine and lumbar spine were normal with preserved height and signal within the intervertebral discs of the lower thoracic spine, normal alignment of the lumbar vertebral bodies and no signal abnormality, no compressive changes, and normal termination of the spinal cord at L1-2.  [*Id.*]  The MRI did show mild annular protrusion projecting into the left lateral recess and left foramen at the L3-4 level and an interbody fusion at the L5-S1 level.  [*Id.*]  David D. Goltra, Jr., M.D. ("Dr. Goltra") opined that, while there was an uncomplicated interbody fusion at the L5-S1 level, there is no evidence of residual or recurrent disc herniation.  [R. 326.]  Dr. Goltra noted mild facet hypertrophy at L4-5 and mild disc bulge at the same level.  [*Id.*]  Dr. Goltra also noted mild suspicion of signal abnormality within the left femoral head and indicated that, if thee was any clinical suspicion of potential for avascular necrosis, he recommended dedicated imaging of the left hip.  [*Id.*]

Plaintiff saw Dr. Holford again on June 4, 2008, complaining of quite a bit of pain in his back.  [R. 316.]  Office notes indicate Plaintiff had a degenerative disc at L4-L5 and that he would continue to be treated conservatively.  [*Id.*]  On August 20, 2008, Plaintiff was seen by Coleman D. Fowble, M.D. ("Dr. Fowble") with complaints of back pain and bilateral knee pain.  [R. 321–22.]  Dr. Fowble's treatment notes indicate Plaintiff fell from standing across large steel bars in August of 2006 and that he had back pain and bilateral knee pain, mostly right knee pain, since that fall.  [R. 321.]  Prior to the fall, Plaintiff had undergone a

19

L5-S1 interbody fusion in 1991; shoulder surgery in 2001; and left knee arthroscopy in 2005. [*Id.*] On physical exam, Plaintiff was found to have a nonantalgic gait, no midline palpable tenderness in the lumbar spine, but paraspinal tenderness in both sides of the lumbar spine. [R. 321.] Plaintiff's knee exam showed very slight effusion of the right knee; no instability to valgus or varus stress; no real joint line tenderness to palpation; and his ligamentous structures were intact to valgus/varus stress, anterior drawer, or Lachman. [R. 322.] Dr. Fowble recommended an EMG/NCS of Plaintiff's lower extremities to see if there was any true nerve root irritation and, if no nerve root irritation is indicated, he recommended an FCE. [*Id.*] Dr. Fowble rated Plaintiff a DRE category 1 with 3% impairment based on his back injury. [*Id.*] With respect to his knee, Dr. Fowble recommended a diagnostic arthroscopy of the knee. [*Id.*]

Plaintiff underwent a subsequent MRI on January 9, 2009. [R. 327–28.] Findings with respect to the thoracic spine and lumbar spine were normal with preserved height and signal within the intervertebral discs of the lower thoracic spine, normal alignment of the lumbar vertebral bodies, and no evident signal abnormality. [R. 327.] There was no obvious abnormality at L1-2; mild annular protrusion at L3-4 projecting into the left lateral recess and left neural foramen; mild diffuse annular bulge and mild facet and ligamentous hypertrophy at L4-5; and an interbody fusion at L5-S1 with no obvious compressive changes. [*Id.*]

On March 18, 2009, Plaintiff underwent an MRI of the left hip due to complaints of pain and some abnormalities on a prior study. [R. 335–336.] The imaging demonstrated no evidence of marrow space edema within the left hip or elsewhere within the bony pelvis. [R. 336.] A trace of fluid was noted within the left hip joint slightly more so than in the right;

however, no myotendinous pathology was evident, no signal abnormality was evident, and no labral disease was evidence.  [*Id.*]  Dr. Goltra noted that there was a tiny effusion within the left hop joint very slightly larger than that on the right and probably physiologic in origin.  [*Id.*]  Dr.Goltra also noted that there were a few inguinal and iliac lymph nodes present and that, depending on the clinical circumstances, a CT of the abdomen and pelvis to evaluate the lymphadenopathy should be considered.  [*Id.*]

On June 16, 2009, Plaintiff underwent an FCE to determine work capabilities by Bolton.  [R. 339–43.]  The results of the Physical Work Performance Evaluation indicated Plaintiff was

> capable of performing physical work at the sedentary range, as defined by the U.S. Department of Labor in the Dictionary of Occupational Titles.  Based on this evaluation, the client is incapable of sustaining the sedentary range of work for an 8-hour day.  Tolerance of the 8-hour day was limited due to problems with significant pain down right posterior lower extremity after performing the sitting trunk rotation task.  The client remained sitting for approximately 5 minutes, then was only able to perform the unilateral standing balance and repeated stair climbing task.  The client was unable to perform the floor to waist or repetitive squatting tasks due to fear of exacerbating right lower extremity pain.

[R. 341.]  Bolton went on to explain that Plaintiff was unable to sustain sedentary work for eight hours due to fatigue as measured by changes in performance/intermittent right posterior lower extremity pain.  [R. 343.]  Bolton also noted that the dynamic strength or manual materials handling section of the test indicated a higher overall level of work than that determined by considering Plaintiff's performance on the entire test.  [*Id.*]  Bolton concluded that the overall level of work Plaintiff was capable of performing was significantly influenced by non-materials handling, i.e., position tolerance and mobility, demands of

21

work. [*Id.*] Plaintiff stopped three out of twenty-one tasks before specific physical signs of a safe maximal effort were observed. [R. 341.] Plaintiff's reasons for his self-limiting behavior included low back and bilateral knee pain. [*Id.*] Self-limiting behavior on four or fewer tasks is considered good overall participation. [*Id.*] Bolton noted the following limitations for Plaintiff:

| | |
|---|---|
| Floor to waist lift | 15 lbs |
| Waist to eye | 25 lbs |
| Two handed carrying | 25 lbs |
| One-handed carrying | 35 lbs |
| Pushing | 50 Flbs[6] |
| Pulling | 45 Flbs |
| Sitting | Frequently |
| Standing | Never |
| Work arms over head-standing | Never |
| Work bent over-standing/stooping | Never |
| Kneeling | Never |
| Work-bent over sitting | Never |
| Squatting | Never |
| Work-over head supine | Never |
| Climbing stairs | Occasionally |
| Repetitive squatting | Never |
| Walking | Frequently |
| Crawling | Never |
| Ladder Climbing | Never |
| Trunk Rotation standing | Frequently |
| Trunk Rotation sitting | Never |
| Balance on level surfaces | Adequate |
| Balance on uneven surfaces | Inadequate |

[R. 342 (footnote added).] Bolton indicated the Plaintiff's limitations appeared to be the result of low back pain, bilateral knee pain, obesity, and intermittent posterior right lower extremity pain. [*Id.*] Bolton also noted Plaintiff was able to complete the three-and-one-half

---

[6]Pounds of Force (Flbs) is the amount of force Plaintiff exerted during the task.

hour evaluation without added rest periods. [R. 343.] Plaintiff left the clinic with the same gait pattern he used to enter, and he drove himself to and from the clinic. [*Id.*]

On March 30, 2010, Dr. Moore of Kingstree Surgical Associates conducted an independent medical review at the request of Plaintiff's counsel to "establish an impairment determination as per standard guidelines." [R. 346; *see* R. 346–51.] Dr. Moore reviewed Plaintiff's medical file, met with Plaintiff, and examined and interviewed Plaintiff. [R. 346.] On examination, Dr. Moore noted Plaintiff had normal grip strength in his upper extremities. [R. 349.] With respect to Plaintiff's lower extremities, Dr. Moore noted antalgic gait with widened stance and right sided limp. [*Id.*] Dr. Moore opined that Plaintiff's symptoms had been present for more than one year and were unlikely to change with any planned treatment, thus he had obtained maximum medical improvement status. [R. 350.] Dr. Moore also opined that Plaintiff was at a less than sedentary status and that, given his education level, job training, age, co-morbidities, dependence on narcotic analgesics, and overall medical prognosis, Plaintiff should be considered as functionally totally disabled. [*Id.*] Dr. Moore indicated that, in his professional opinion, a 23% whole person impairment rating was the correct description of Plaintiff's lumbar pathology. [*Id.*] Dr. Moore went on to assign a 5% whole person impairment rating to Plaintiff's gait; an 8% whole person impairment rating to Plaintiff's right knee; and an 8% whole person impairment rating to Plaintiff's left knee; or a total combined sum of 38%[7] impairment to Plaintiff's whole person. [R. 351.]

---

[7]Plaintiff's combined impairment ratings actually add up to a 44% whole person impairment rating.

Plaintiff underwent x-rays of his knees on June 29, 2010. [R. 370.] Alfonso Gay, M.D. ("Dr. Gay") of Aiken Regional Medical Centers noted that no fracture or bone erosion was seen and that the knee joints were symmetric and preserved. [*Id.*] X-rays the lumbar spine showed normal alignment and a congenital fusion at L5-S1; however, disc spaces were otherwise preserved and the vertebral bodies and posterior elements were intact. [R. 372.]

A Physical RFC was completed by Elva Stinson, M.D. ("Dr Stinson") on August 12, 2010, indicating Plaintiff was capable of lifting/carrying 20 pounds occasionally; lifting/carrying 10 pounds frequently; standing/walking at least 2 hours in an 8-hour workday; sitting about 6 hours in an 8-hour workday; and pushing/pulling in unlimited fashion. [R. 379.] Dr. Stinson also found Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders/ropes/scaffolds. [R. 380.] Dr. Stinson also noted Plaintiff should avoid concentrated exposure to extreme cold, heat, fumes, odors, dusts, gases, poor ventilation, and hazards. [R. 382.] Dr. Stinson noted Dr. Holford's July 2009 opinion—that Plaintiff was limited to sedentary work but could not complete an 8-hour day—but found the opinion unsupported by normal x-rays of the knees and lumbar spine along with mild to moderate LOM and no significant neuro findings to support the conclusion. [R. 384.] A Physical RFC was completed in February 2011 by Ted Roper ("Roper") which was less limiting, finding Plaintiff capable of light work. [R. 387–393.]

Plaintiff saw Dr. Holford in November 2010 with pain and tenderness in his knees and back. [R. 396.] Dr. Holford noted Plaintiff seemed to be managing relatively well, and he advised Plaintiff to keep exercising. [*Id.*] Plaintiff saw Dr. Holford again on May 16,

2011 with complaints of knee problems and difficulty ambulating.  [R. 395.]  Dr. Holford

decided to continue to treat Plaintiff conservatively.  [*Id.*]  On February 2012, Plaintiff saw

Dr. Holford with continued pain and tenderness in his knee.  [R. 428.]  Treatment notes

indicate Dr. Holford continued to treat Plaintiff conservatively.  [*Id.*]

### The ALJ's Treatment of Medical Opinions

After summarizing the medical evidence of record [R. 23–26], the ALJ concluded

that the objective medical evidence was not fully consistent with Plaintiff's allegations of

disability [R. 27].  The ALJ explained as follows:

> As for the opinion evidence, Dr. Holford has rendered multiple
> opinions of the claimant's capabilities.  In January 2008, Dr.
> Holford reported that the claimant had been returned to light
> duty work as was able to stand continuously and engage in
> frequent postural changes (Exhibit 5F, p.41).  In February
> 2008, Dr. Holford determined that the claimant could perform
> light work, but added additional postural limitations such as no
> squatting or crouching and infrequent bending and pushing and
> pulling (Exhibit 5F, p.44).  In July 2009, Dr. Holford indicated
> that the claimant is able to perform the exertional requirements
> of sedentary work, but probably not on a full-time basis.  He
> also indicated that the claimant has a 12% impairment in each
> knee and a 5% impairment in his back (Exhibit 5F, p.22 and
> Exhibit 16F, p.8).  I have considered Dr. Holford's various
> opinions and have given them all some weight in my decision.
> However, I have not given controlling weight to anyone opinion
> given the objective medical evidence in the record.  MRIs and
> x-rays of the claimant's spine and knees do show some
> significant degenerative disease.  Further, his back and knee
> problems have progressively worsened over time.  However,
> the claimant's date last insured in this case is June 2011 and
> I can only consider the medical evidence prior to that date.
> Given the rather unremarkable neurological deficits on
> examination and the claimant's conservative treatment history,
> it appears the medical evidence is consistent with the claimant
> having the ability to perform some sedentary work activity prior
> to his date last insured (Exhibits 4F, p.6-7, Exhibit 5F, p.26-27,
> 42-43, Exhibit 6F, Exhibit 12F, Exhibit 16F, p.12-13, Exhibit
> 18F, and Exhibit 20F).

25

I have also considered the functional capacity evaluation performed in June 2009 (Exhibit 8F). However, it is filled with several conflicting findings that undermine is usefulness in this case. For example, the evaluator found the claimant able to perform sedentary work, but also stated that he can only remain seated for five minutes. Further, lack of effort and consistency were noted in one portion of the exam, while found not to be present in another (Exhibit 8F, p.1 and 3). It was found that the claimant can never stand, but can frequently walk and occasionally climb stairs, two activities that require the ability to stand (Exhibit 8F, p.3). In light of these considerable inconsistencies, I gave little weight to this report.

I also gave little weight to the opinion of Dr. Moore dated March 30, 2010 (Exhibit 9F). Dr. Moore indicated that in making this determination that he considered the claimant education, training, and age in making his conclusion that the claimant is functional disabled (Exhibit 9F, p.5). While Dr. Moore likely has excellent medical credentials, there is no indication of any vocational expertise. In addition, as discussed above, the objective medical evidence indicates that the claimant should be able to perform some sedentary work and Dr. Moore has not articulated any functional limitations that would prevent the claimant from performing sedentary work in either of his evaluations of the claimant (Exhibit 9F and 13F).

I gave some weight to the determination of the state medical consultants (Exhibit 14F and 15F), which are somewhat consistent with the objective evidence. However, considering the record as a whole, including the opinions of the claimant's treatment providers and his testimony at the hearing, I conclude that the claimant is more limited then was assessed by the State agency physicians. The record indicates that the claimant's knee and back problems would most likely prohibit him from performing any standing or walking for extended periods of time.

[R. 27–28.]

### *Discussion*

A review of the ALJ's decision shows that the ALJ evaluated the medical opinions of record in accordance with 20 C.F.R. § 404.1527, and that she adequately indicated and

explained the weight she assigned to the opinions based on the medical records as a whole.  With respect to Dr. Holford's opinions, Plaintiff recites the evidence of record and argues, among other things, that the ALJ failed "to explain why significant degenerative disease of the back and knees would not restrict an individual from performing sedentary work on a full time basis."  [Doc. 17 at 21.]  Further, Plaintiff takes issue with the ALJ's finding that Plaintiff "can perform sedentary work that allows for frequent changes of position."  [*Id.*]  Plaintiff, however, seeks to impermissibly place a burden on the Commissioner that should have been carried by Plaintiff.  While Plaintiff complains the ALJ failed to explain why his impairments do not restrict him from sedentary work, it was Plaintiff's burden to prove he is incapable of sedentary work.  *See* 42 U.S.C. § 423(d) (5) ("The Plaintiff bears the burden of establishing his inability to work within the meaning of the Act.")  The ALJ explained that Dr. Holford's opinion that Plaintiff could not work an 8-hour day was not entitled to controlling weight because Plaintiff's medical examinations showed unremarkable neurological deficits and Plaintiff's treatment history has been relatively conservative in nature.  Additionally, other medical evidence of record, specifically x-rays by Dr. Gay from June 2010, showed no fracture or bone erosion in the knees and knee joints that were symmetric and preserved.  [R. 370.]  X-rays of the spine also showed normal alignment, a congenital fusion at L5-S1, and disc spaces that were otherwise preserved and vertebral bodies and posterior elements that were intact.  [R. 372.]  The Court finds the ALJ's weighing of Dr. Holford's opinion is supported by substantial evidence.

While physical therapist Bolton noted Plaintiff could perform work at a sedentary level but could not tolerate an 8-hour workday, the ALJ explained that Bolton's

determination was entitled to little weight because of the internal inconsistencies within her findings, e.g., her finding "that the claimant can never stand, but can frequently walk and occasionally climb stairs, two activities that require the ability to stand." [R. 28.] Here, the ALJ explained her basis for giving Bolton's opinion little weight. Plaintiff seeks to explain away the inconsistencies described by the ALJ by explaining that because Plaintiff "was not able to stand up to 1/3 of the day, he would be classified as never being able to stand." Plaintiff, however, does not provide any basis for this Court to find that, even adopting this interpretation, Plaintiff could not perform sedentary work allowing the option to alternate between sitting and standing in 30 minute intervals, as provided in the RFC. Because the finding of inconsistencies in the opinion is a sufficient basis for giving the opinion little weight, the Court declines to address Plaintiff's argument with respect to the ALJ's findings regarding Plaintiff's failure to give maximum effort on exam. Accordingly, the Court finds the ALJ's weighing of Bolton's opinion is supported by substantial evidence.

Finally, with respect to Dr. Moore's opinion that Plaintiff was at less than sedentary status and should be considered functionally totally disabled given his education level, job training, age, co-morbidities, dependence on narcotic analgesics, and overall medical prognosis, the ALJ properly gave this opinion little weight as it was not supported by the medical evidence and was directed to a decision reserved to the Commissioner. SSR 96–5p provides in part,

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may

> determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

Based on this regulation, Dr. Moore's opinion that Plaintiff is disabled is not entitled to controlling weight. And, given the ALJ's discussion of her consideration of this opinion, and Dr. Moore's recitation of vocational factors rather than objective medical evidence in support of his opinion, it cannot be said that the decision is not supported by substantial evidence or is contrary to law.

**Credibility**

Plaintiff challenges the ALJ's credibility determinations as failing to comply with the two step analysis required in this Circuit. Plaintiff argues that "the credibility rationale focuses entirely on what the ALJ paints to be insufficient medical evidence supporting [Plaintiff's] allegations" and that the "ALJ selectively [chose] what medical evidence to acknowledge and discuss." [Doc. 17 at 34.] In doing so, Plaintiff contends the ALJ failed to perform step two of the analysis and failed to evaluate the impact of Plaintiff's condition on his everyday life. [*Id.*]

The determination of whether a person is disabled by pain or other symptoms is a two-step process. First, the ALJ must determine whether objective medical evidence shows the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities and that could reasonably be expected to produce the pain or other symptoms alleged. *Craig*, 76 F.3d at 593, 595. Only after Plaintiff makes this threshold showing is the ALJ obligated to evaluate the intensity and persistence of the Plaintiff's pain, and the extent to which it affects his ability to work. *Id.* Whenever a

claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record. SSR 96–7p, 61 Fed. Reg. at 34,485. The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*; *see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

The following is a nonexhaustive list of relevant factors the ALJ should consider in evaluating a claimant's symptoms, including pain: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, received to relieve the symptoms; and (6) any measures the claimant has used to relieve the symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). If the ALJ points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination. Mastro, 270 F.3d at 176 (holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency).

### The ALJ's Credibility Determination

The ALJ explained Plaintiff's testimony as follows:

30

At the hearing, the claimant testified that he is unable to work due to pain in his back and knee. He stated that both of his knees need to be replaced and he is getting to the point where he has bone on bone contact in his knees. He noted that he has had several surgeries on his knees with the first performed in 1997. The claimant also has a history of a prior back fusion, which was performed in 1991. He takes Loracet for his pain, but has significant pain four days out of the week. The claimant estimated that he can stand for 25 minutes and stated he uses a cane to help him get up and down and to keep him from falling. The cane was gift from his mother and was not prescribed by his physician. The claimant stated he can sit for awhile, but finds that he adjusts his position constantly. He does not attempt to climb stairs and is awoken at night due to back pain occasionally. The claimant said that epidural steroid injections have not helped his pain. He noted that he has not had any physical therapy in the last three years.

In regard to his activities of daily living, the claimant is divorced and lives alone. He stated that his son and his son's girlfriend help him with his daily activities. In addition, he pays a woman up the street to help him clean his home. The claimant lives in a mobile home with five steps going up into the home. He watches television to pass the time and stated he has problems staying awake when doing so. The claimant does a little charity work for an hour or so a week. He reported problems reading but admitted he has a bank account and can take care of his own finances. The claimant said that he tries to go to church once or twice a month, but does not get out for much else. The claimant said that he spends most of his day sitting in a reclined position in order to ease his pain.

[Doc. 26–27.] At step one, the ALJ confirmed the presence of objective medical evidence showing the existence of medical impairments that could reasonably be expected to produce the pain or other symptoms alleged by Plaintiff. [R. 27.] Next, the ALJ moved on to the step two analysis, finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not entirely credible for the following reasons:

The objective medical evidence is not fully consistent with the claimant's allegations.  MRIs and x-rays of the claimant's lumbar spine have generally shown only mild degeneration with no evidence of significant spinal canal stenosis or disc herniations (Exhibits 5F, p.26-27, 42-43, Exhibit 12F, Exhibit 16F, p.12-13).  The claimant's treatment for his back disorder has been relatively conservative.  The claimant has pursued treatment in the form of narcotic medication and epidural injections.  However, since the alleged onset date, he has not pursued surgery, chiropractic adjustments, or physical therapy (Exhibits 5F, Exhibit 16F, Exhibit 18F, and Exhibit 20F).  This relatively conservative treatment history suggests that the claimant's pain may not be of disabling severity and he has been able to function without aggressive treatment (Exhibits 5F; 16F; 18F; 20F).  In addition, although the claimant does have advanced arthritis in his knees, his imaging studies are not inconsistent with an ability to perform some sedentary, sit down type work (Exhibit 4F, p.6-7, Exhibit 12F).  In August 2008, Dr. Fowbla reported the claimant did not have an antalgic gait and had no current objective findings to support allegations of knee pain (Exhibit 6F).  The record also shows that the claimant's knee problem have responded well in the past to knee braces and epidural steroid injections (Exhibit 5F, p.6-10, Exhibit 16F, p.9).

[*Id.*]  After discussing the medical opinions of record, the ALJ concluded,

The issue of credibility in this case cannot be discussed analytically in absolute terms, but must be measured by degree.  The claimant alleged, and may have honestly believed, that his limitations preclude him from performing work.  However, it is my duty to accurately determine the degree of the claimant's limitations and his residual functional capacity based upon the testimony presented and the totality of all of the other evidence of record.  In that regard, I note that the claimant has degenerative changes of the back and knees that have gradually worsened over time.  However, his entitlement to disability benefits expired in June 2011 and I can only look at his functioning prior to that date.  The claimant received only conservative treatment for his impairments prior to this date and never required any hospitalizations.  I conclude that claimant's clinical examinations and objective test result did not reveal the presence of any acute or chronic abnormalities that would have been severe enough to prevent

the claimant from performing at least sedentary work activity
prior to June 2011.

[R. 28.]

### Discussion

The undersigned concludes that the ALJ conducted the proper credibility analysis and cited substantial evidence to support her finding that Plaintiff's subjective complaints were not entirely credible.  The ALJ explained the correct legal standard for evaluating subjective complaints of pain in great detail; recognized and conducted the two-step analysis; and clearly articulated the correct legal lens through which to view Plaintiff's subjective complaints of pain.  [*See* R. 26–27.]  After discussing Plaintiff's medical history and activities of daily living, the ALJ concluded that Plaintiff's allegations of pain were not entirely credible based on his relatively conservative treatment history prior to his last date insured and the lack of objective findings to support a finding that Plaintiff could not perform at least sedentary work activity prior to his last date insured.  [*See* R. 27.]  As an initial matter, a conservative treatment history is a proper basis for discounting Plaintiff's pain complaints.  *See Coffey-Watson v. Astrue*, Civil Action No. 3:09-1479-HFF-JRM, 2010 WL 3878918, at *10 (D.S.C. June 25, 2010) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996)), *Report and Recommendation adopted by* 2010 WL 3878860.  Further, while the ALJ may not discount subjective complaints of pain merely because objective evidence of the existence of pain is lacking, the Fourth Circuit has noted that "a claimant's allegations about [his] pain . . . need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can

33

reasonably be expected to cause the pain the claimant alleges []he suffers." *Craig*, 76 F.3d at 595.

The Court finds no merit in Plaintiff's argument that the ALJ failed to perform the step two analysis or evaluate the impact of Plaintiff's condition on his everyday life where the ALJ's duty was to determine whether Plaintiff could perform sedentary work with additional postural limitations. [*See* R. 26–27.] Additionally, Plaintiff's argument that the ALJ selectively chose what medical evidence to acknowledge is likewise without merit because Plaintiff failed to specifically direct the Court to any finding or medical evidence that was not taken into account by the ALJ and failed to point out any impact on Plaintiff's life or functioning not considered by the ALJ. Further, the Court finds that the ALJ thoroughly considered the record as a whole and gave substantiated reasons for finding Plaintiff's allegations concerning the severity of his symptoms not credible. That some of the evidence could have theoretically supported a different finding, as Plaintiff's arguments suggest, is irrelevant. "Credibility is the province of the ALJ." *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992). A reviewing court should "generally treat credibility determinations made by an ALJ as binding upon review" where the ALJ has given specific, legitimate reasons for disbelieving the claimant's testimony. *Gosset v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988). Accordingly, the Court cannot find that the ALJ's credibility determination is not supported by substantial evidence.

**Vocational Expert**

Plaintiff contends the ALJ and VE failed to acknowledge and resolve the conflict between the VE testimony and the DOT where the VE indicated his testimony was

34

consistent with the DOT when it was not because the need for frequent position changes

every 30 minutes is not contemplated by the DOT.  [Doc. 17 at 36.]

The ALJ has an affirmative duty to inquire into conflicts between the VE's testimony

and the DOT:

> Occupational evidence provided by a VE or [vocational specialist ("VS")] generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict.  The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.
>
> . . . .
>
> When a VE or VS provides evidence about the requirements of a job or occupation, *the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.*  In these situations, the adjudicator will:
>
> - Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> - If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 65 Fed. Reg. 75,759-01, at 75,760 (Dec. 4, 2000) (emphasis added).

Here, at the hearing, the ALJ and VE had the following colloquy with respect to the

availability of jobs in the national economy that Plaintiff could perform:

> ALJ:  Okay, can you please assume an individual of the same age, education, and past work experience as the claimant.  The individual is able to perform the exertional and nonexertional requirements of sedentary work, except they need an option to sit or stand at their discretion at 30-minute intervals.  The individual can perform occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds.  They need to avoid concentrated exposure to extreme heat, extreme cold, fumes, odors, dusts, gases, and work hazards.  Could such an individual perform any work in the regional or national economy?
>
> VE:  Within the region, which would be South Carolina, there would be jobs, and in the national economy, there would be jobs within your hypothetical, jobs to include assembler.  This is a vocational preparation times [phonetic] 2 --
>
> ALJ:  I'm sorry, could you repeat that?  We didn't get it.
>
> VE:  Oh, I'm sorry.  Assembler.
>
> . . .
>
> ALJ:  All right, thank you.  Ms. Pasokowski, was your testimony today consistent with the DOT?
>
> VE:  It is [INAUDIBLE] definition of sedentary between seated six out of eight-hour day.  Beyond that, all of my testimony comports with the DOT.

[R. 58–59, 61.]

The Court finds Plaintiff's argument unavailing.  Because the DOT is silent as to a

sit/stand option, the undersigned cannot find that the VE's testimony was inconsistent with

the DOT.  *See Thompson v. Astrue*, C/A 8:09–1968–JFA-BHH, 2010 WL 3878729, at *4

(D.S.C. June 16, 2010) (collecting cases and holding there can be no apparent conflict between sit/stand testimony and the DOT because the DOT does not discuss the availability of a sit/stand option), *Report and Recommendation adopted by* 2010 WL 3880047. In this case, the ALJ complied with her duty. The ALJ posed a hypothetical that accounted for all of Plaintiff's symptoms and included a sit/stand option; after the VE responded that Plaintiff could perform multiple jobs, the ALJ asked the VE whether her testimony was consistent with the DOT. After providing an adequate hypothetical and asking the VE to explain any inconsistencies, the ALJ is entitled to rely on the VE's testimony. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992) (stating that testimony elicited by hypotheticals adequately relating all of claimant's impairments may constitute substantial evidence to support the ALJ's decision). Accordingly, the Court finds no error in the ALJ's reliance on the VE's testimony.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 10, 2015
Greenville, South Carolina